Campbell, Chief Justice,
delivered the opinion of the court :
The plaintiff was a ship’s writer in the United States Coast Guard. His term of enlistment expired on January 4, 1918. At that time the vessel on which he was serving was in the European war zone. He did not reenlist at that time, but continued to serve until 'November 30, 1918. As a reason for this extension of his enlistment, there is a notation on his enlistment contract as follows: “ Country at war and vessel on distant service. Enlistment was therefore extended from January 4,1918, to November 30,1918, at which time he desired to reenlist, and was accordingly discharged for the convenience of the Government for reenlistment for the period of the war, not to exceed three years.” He sues for the additional pay allowed by section 1422, Bevised Statutes, as amended. See act of July 17, 1862, 12 Stat. 610, B. S. 1422-1425, 1572, and act of March 3, 1875, 18 Stat. 484. It does not appear that the enlisted man at or prior to the expiration of his enlistment period actually expressed a desire to be returned to an American port, but after this date he asked to be returned in order that he might complete his naturalization and enlist in the Naval Beserve Force.
The act of March 3, 1875, 18 Stat. 484, Bev. Stat., sec. 1422, provides:
“ That it shall be the duty of the commanding officer of any fleet, squadron, or vessel acting singly, when on service,
*468 to send to an Atlantic or to a Pacific port of the United States, as their enlistment may have occurred on either the Atlantic or Pacific coast of the United States, in some public or other vessel, all petty officers and persons of inferior ratings desiring to go there at the expiration of their terms of enlistment or as soon thereafter as may be, unless in his opinion the detention of such persons for a longer period should be essential to the public interests, in which case he may •detain them, or any of them, until the vessel to which they belong shall return to such' Atlantic or Pacific port. All persons enlisted without the limits of the United States may be discharged, on the expiration of their enlistment, either in a foreign port or in a port of the United States, or they may be detained, as above provided, beyond the term of their enlistment; and that all persons sent home or detained by a commanding officer according to the provisions of this act shall be subject in all respects to the laws and regulations for the government of the Navy until their return to an Atlantic or Pacific port and their regular discharge; and all persons so detained by such officer or reentering to serve until the return to an Atlantic or Pacific port of the vessel to which they belong shall in no case be held in service more than thirty days after their arrival in said port; and that all persons who shall be so detained beyond their terms of enlistment or who shall after the termination of their enlistment voluntarily reenter to serve until the return to an Atlantic or Pacific port of the vessel to which they belong and their regular discharge therefrom shall receive for the time during which they are so detained, or shall so serve beyond their original terms of enlistment, an addition of one-fourth of their former pay: Provided, That the shipping articles shall hereafter contain the substance of this section.
This enactment is in the interest of the designated persons and for their protection, and should be construed to carry out that purpose. It requires that the shipping articles contain its substance. At the end of his enlistment period the man is, generally speaking, entitled to his discharge, and this right is recognized by the statute, with the exception noted that the detention of such person for a longer period is allowable, when,- in the opinion of the commanding officer, the detention be essential to the public interests. In specific terms, the statute imposes the duty of sending the man desiring to go there at the expiration of his term of enlistment to an Atlantic or Pacific port, according as the enlistment may have occurred on the Atlantic or Pacific side. This duty is *469 not limited by the reason assigned by the man who desires to be returned, because the statute contemplates it as a right to which he is entitled, and which should be respected. He is also entitled to liberality of construction of the shipping articles. Mr. Justice Story speaks of seamen as “ emphatically the wards of the admiralty ” and declares they should be treated by the courts as equity deals with its wards. Hardin v. Gordon, 2 Story, 541, 556. The assistant comptroller finding that the plaintiff, at the expiration of his enlistment, had requested his discharge “in order that he might enroll in the reserve force, because he believed he could secure a better rating in that service than ship’s writer in the Coast Guard,” held that the statute applies to those who “ desire ” to be returned, and that the request mentioned “ did not necessarily mean that the man desired to be sent, back to the United States, since it was not necessary for him to return to the United States in order to enlist in the Naval! Reserve- Force.” This view, it seems to us, would impose the-burden on the enlisted man of giving a definite reason for his; return, and thereby tend to relieve the commanding officer of a duty imposed by the statute itself. The shipping articles may state whether the enlisted man desires to be sent back at the end of his enlistment, or the fact may otherwise appear. It is not too much to say that the statute does not require that a formal application be made, or well-grounded! reasons be given, by the enlisted man. When the time of enlistment expires it is known to the ship’s officers. When discharging him because of the expiration of his enlistment,, there being a duty to send him back, it is not an unreasonable' requirement that the officer should find out what the man’s: desires are upon the question of returning. And though he-may expi’ess the desire to be sent back, the enlisted man may yet be detained, if the commanding officer regards it as essential to the public interests, and if so detained, he is entitled to additional pay. There is another event in which additional pay becomes due, which is when, after the expiration of his enlistment, the man voluntarily reenters to serve until the vessel’s return and his regular discharge therefrom. In either case he shall not be held in service more than thirty days after the vessel’s return.
*470 In the instant case the vessel was in European waters and it was in time of war. The facts show that upon the enlistment contract was a notation to the effect that the enlistment was extended because the country was at war and the vessel on distant service. This, in the circumstances stated, is sufficient for the detention authorized by the statute, and it is to be assumed that the officer intended to comply with his statutory duty in regard to the detention. The man did not reenlist, but he continued to serve until his discharge in November. We think he is entitled to the additional pay which the statute provides.
Judgment for plaintiff in the sum of $163.
Graham, Judge; Downey, Judge; and Booth, Judge, concur.